[797 NYS2d 663]

Niagara Mohawk Power Corporation, Respondent, v Anthony Salerno, Appellant.

Fourth Department, June 10, 2005

**APPEARANCES OF COUNSEL**

*Harter, Secrest & Emery LLP*, Rochester (*Jerauld E. Brydges* of counsel), for defendant-appellant.

*Hiscock & Barclay, LLP*, Syracuse (*Robert B. Liddell* of counsel), for plaintiff-respondent.

*O'Connell* and *Aronowitz*, Albany (*Jane Bello Burke* of counsel), for New York State Health Facilities Association, Inc., amicus curiae.

## OPINION OF THE COURT

SCUDDER, J.

Plaintiff commenced this action seeking damages from defendant based upon a residential health care facility's nonpayment of fees for utility services. The primary issue before us on this appeal is whether defendant, the president and sole shareholder of two companies, one of which is the receiver for the residential health care facility and the other of which owns the real property on which the residential health care facility is located, may be liable for the nonpayment of those fees as a "controlling person" within the meaning of Public Health Law § 2808-a (2). For the reasons that follow, we conclude that defendant is not a controlling person within the meaning of that statute. We further conclude that, in any event, a controlling person of a residential health care facility may not be held liable under Public Health Law article 28 for the alleged breach of contract arising from nonpayment of fees for utility services. Thus, we conclude that Supreme Court erred in denying defendant's motion to dismiss the amended complaint based on the failure to state a cause of action (*see* CPLR 3211 [a] [7]).

The underlying facts are undisputed. Defendant is the president and sole shareholder and director of HCA Genesis, Inc. (HCA). By agreement dated February 3, 1999, HCA was appointed to serve as the receiver for Mercy Hospital of Watertown, Inc. (Mercy), a residential health care facility, pursuant to Public Health Law § 2810 (1). HCA owns the intangible assets of Mercy and its interim operating license, and HCA's affiliate, MGNH, Inc. (MGNH), is the owner of the real property on which Mercy is located. HCA incurred costs for utility services provided by plaintiff at Mercy in the approximate amount of $3.1 million between February 1999 and April 2004. In December 2002 plaintiff commenced a breach of contract action against HCA and MGNH seeking payment for those utility services. That action was stayed based on petitions filed by the defendants therein in Bankruptcy Court seeking relief under chapter 11 of the Bankruptcy Code (11 USC).

Plaintiff thereafter commenced the instant action, alleging that defendant is personally liable for damages resulting from a

breach of fiduciary duty to creditors by HCA as the receiver for Mercy as well as HCA's gross negligence and intentional acts, in violation of Public Health Law § 2810 (1). The amended complaint alleges that, as a result of defendant's ownership of all or the majority of the stock in HCA and MGNH, defendant has an indirect ownership interest in Mercy and thus "is a controlling person of a residential health care facility, as defined in" Public Health Law § 2808-a (2). Defendant counters, inter alia, that he is not a "controlling person" and that, in any event, the "controlling person" of a residential health care facility may not be held liable for breach of contract relating to the nonpayment of fees for utility services. We agree with defendant in both respects, and we therefore conclude that the court erred in denying his motion seeking dismissal of the amended complaint for failure to state a cause of action.

Pursuant to Public Health Law § 2808-a (2), a controlling person of a residential health care facility is one "who by reason of a direct or indirect ownership interest . . . has the ability . . . to direct or cause the direction of the management . . . of said facility." Section 2808-a (1) provides that a controlling person is liable "under any provision of this article to any person or class of persons for damages . . . to the same extent as such residential health care facility."

There are two bases for the liability of a residential health care facility pursuant to article 28 of the Public Health Law. One basis for liability is pursuant to section 2801-d (1), which provides in relevant part that a residential health care facility "that deprives any patient of said facility of any right or benefit . . . shall be liable to said patient for injuries suffered as a result of said deprivation." The other basis for liability is pursuant to section 2803 (6), which provides in relevant part that a residential health care facility may be liable for penalties "for continuing violations of rules and regulations promulgated pursuant to article twenty-eight of this chapter and pertaining to patient care by residential health care facilities" (§ 2803 [6] [a]).

According to the legislative history of Public Health Law § 2808-a, that section was enacted in order to provide that "controlling persons could be named as defendants in actions by patients and would be liable for the fines and penalties as set forth in other [Moreland] Commission bills" (Senate Introducer Letter in Support, July 15, 1975, Bill Jacket, L 1975, ch 651). Thus, as the legislative history makes clear, the liability of a controlling person was intended to be the same as that of the

residential health care facility under Public Health Law article 28.

Plaintiff further contends that Public Health Law § 2810 (1), pursuant to which HCA was appointed as receiver, creates the requisite liability under a provision of Public Health Law article 28 necessary to deem defendant a controlling person. We reject that contention. Section 2810 (2) (d) provides in relevant part that "[t]he receiver shall be liable only in his official capacity for injury to person and property by reason of conditions of the facility in a case where an owner would have been liable; he shall not have any liability in his personal capacity, except for gross negligence and intentional acts." That section does not create a third statutory basis for the imposition of liability with respect to residential health care facilities and, as previously noted, a controlling person may be liable only to the extent that a residential health care facility is liable (*see* § 2808-a [1]). Contrary to plaintiff's contention, section 2810 (2) (d) merely concerns the scope of potential liability in an action against a receiver; it does not constitute "a statutorily created cause of action" (*Lorberblatt v Gerst*, 10 NY2d 244, 248 [1961]; *see generally Munoz v Pappas*, 16 AD2d 142, 145 [1962]).

Even assuming, arguendo, that defendant may be deemed a controlling person, we would nevertheless conclude that the liability of a residential health care facility, and thus the liability of a controlling person thereof, for the nonpayment of fees for utility services is not created by a provision of article 28. We note that plaintiff's reliance on *Ocean Side Institutional Indus. v United Presbyt. Residence* (254 AD2d 337 [1998]) is misplaced inasmuch as the Court therein did not reach the issue whether the relief sought, i.e., damages for the nonpayment of fees for linen services, was available pursuant to Public Health Law article 28. In light of our decision, we need not reach the remaining contentions of the parties.

Accordingly, we conclude that the order should be reversed, defendant's motion granted and the amended complaint dismissed.

HURLBUTT, J.P., KEHOE, GORSKI and HAYES, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously reversed, on the law, without costs, the motion is granted and the amended complaint is dismissed.