[Civil No. 724.   Filed March 21, 1901.]

[64 Pac. 490.]

C. F. SCHUMACHER et al., Defendants and Appellants, v. PIMA COUNTY, Plaintiff and Appellee.

1. EVIDENCE — COUNTY WARRANT—PAYMENT—SUFFICIENCY.—A county warrant signed by the chairman and secretary of the board of supervisors, indorsed by the payee, and marked "Redeemed and canceled" by the county treasurer is sufficient evidence of the payment of money voted and for which such warrant was issued.

2. SAME — ADMISSIBILITY — RESULTS OF EXAMINATION OF VOLUMINOUS RECORDS AND DOCUMENTS MAY BE GIVEN.—In an action by a county against the supervisors thereof to recover money unlawfully paid to the probate judge it is proper to admit testimony as to the results of the examination of the records of the probate court, it being a recognized exception to the general rule of evidence that when it is necessary to prove the results of voluminous facts or the examination of many books and papers, and the examination cannot conveniently be made in court, the result may be proved by the person who made the examination.

3. SAME — SUFFICIENCY — COUNTIES—OFFICE AND OFFICERS — ACTION AGAINST SUPERVISORS FOR MONEY UNLAWFULLY PAID—BOARD OF SUPERVISORS.—Evidence tending to show that during a period of years the legal fees chargeable by the probate court would be $4,088.75, and that the probate judge had charged only $2,190.40, and paid to the treasurer but $1,643.45, is sufficient to sustain a judgment against the supervisors for having unlawfully paid salary to the probate judge when he was indebted to the county.

4. COUNTIES—OFFICE AND OFFICERS—BOARD OF SUPERVISORS—MEMBERS LIABLE FOR UNLAWFUL PAYMENT OF SALARY—PROBATE JUDGE—SALARY — FEES — DUTY TO COLLECT AND TURN OVER TO COUNTY — REV. STATS. ARIZ. 1887, PAR. 409, PAR. 1987 AS AMENDED BY LAWS 1889, ACT NO. 53, PAR. 428, AND PAR. 384, AS AMENDED BY LAWS 1893, ACT NO. 34, CONSTRUED—AVERY V. PIMA COUNTY, ANTE, P. 26, 60 PAC. 702, FOLLOWED.—Paragraph 409 *supra,* prohibits the county board of supervisors from allowing any demand against the county treasury, in favor of any person indebted to the county, without first deducting such indebtedness. Act No. 53, *supra,* limits the compensation of probate judge to a fixed salary. Paragraph 428, *supra,* requires that all fees shall be collected in advance and paid into the county treasury. Act No. 34, *supra,* makes the supervisors and party in whose favor the order is drawn responsible for all money unlawfully paid out of the county treasury for salaries on orders drawn by said board. *Held,* following *Avery* v. *Pima County, ante,* p. 26, 60 Pac. 702, that an action was properly brought against the board of supervisors and the assignee of a probate judge to recover salary paid to such assignee of said judge, the judge having failed to collect fees connected with his office and to turn over those collected, and being at the time of payment indebted to the county.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

C. W. Wright, and Barnes & Martin, for Appellants.

Rochester Ford, for Appellee.

DOAN, J.—From January 1, 1891, continuously until January 1, 1897, one J. S. Wood was the duly elected, qualified, and acting probate judge of Pima County. From January 1, 1891, to January 1, 1899, C. F. Schumacher, M. G. Samaniego, and Thomas Q. Bullock were the duly elected, qualified, and acting supervisors, and constituted the board

of supervisors of Pima County. On April 5, 1897, J. S. Wood assigned to C. F. Weber his claim against Pima County for three hundred dollars, on account of salary as probate judge for the fourth quarter of 1896. This claim was by Weber presented to the board of supervisors, and was by them allowed and ordered paid, and a warrant issued therefor, and on the same day (April 5, 1897) the said warrant was presented by Weber and paid by the county treasurer. This action was brought in May, 1897, against C. F. Schumacher, M. G. Samaniego, and Thomas Q. Bullock, as members of the board of supervisors of Pima County, for having, without authority of law, allowed and ordered paid to the said Weber the said claim, and against C. F. Weber as the party in whose favor the order was made. The allowance and order were alleged to have been unlawfully made by reason of the said Wood as such probate judge then being indebted to the said county for fees which he had earned and collected as probate judge, and had not paid into the county treasury as required by law. It was alleged in the complaint that the said J. S. Wood, at sundry and divers times since January 1, 1891, as probate judge, had collected in his official capacity fees for official services, amounting to the sum of twenty-five hundred dollars, and that he had failed to pay into the county treasury said amount or any part thereof; that during said time there were due to the said Wood for services performed by him as such probate judge fees in the sum of twenty-five hundred dollars, and that said Wood, as such officer, had willfully refused to collect said fees or any part thereof. The case was tried by the court without a jury, and judgment was rendered against the appellants for the sum of three hundred dollars, together with the statutory penalty of twenty per cent thereon, and interest and costs. From this judgment, and the denial of a motion for a new trial, the defendants appeal, and present ten assignments of error.

It is alleged in the seventh assignment that the court erred in striking from the record, on motion of appellee, the evidence of Wood to the payment of dues to the county. An examination of the record does not disclose any such ruling, but, on the contrary, the motion of appellee to strike the evidence from the record was by the court denied, except as to the part of Wood's testimony which was stated by the wit-

ness to be hearsay, and which the court said would not be considered for that reason.

The tenth assignment, alleging that there was no evidence that the money voted was ever paid by the county, was likewise not sustained by the record. The county warrant, signed by the chairman and the secretary of the board of supervisors, indorsed by Weber, the payee, and marked "Redeemed and canceled" by the county treasurer, was introduced in evidence by the plaintiff, and appears in the record.

The second, sixth, eighth, and ninth assignments of error raise the question of the sufficiency of the evidence to sustain the judgment, the determination of which would depend on the disposal of the third, fourth, fifth, and sixth assignments, which will be first considered, and which allege that the court erred in permitting the witness Bowman to give testimony as to the result of his examination of the books and records of the probate court and the treasurer's office. The testimony of Bowman was to the effect that he was employed by the board of supervisors to examine the records of the probate court of the county in the course of the investigation of charges against Probate Judge Wood for the non-payment of fees, and the failure or refusal to file sworn statements or reports. The witness stated that he was a lawyer; that he had been deputy clerk of the district court for four years, and assistant district attorney; that under his employment by the board of supervisors he had searched each transaction of the probate court from January 1, 1891, to November 18, 1896; that from the examination of the estates filed during that time the legal fees chargeable would be $4,088.75. The amount that was charged was $2,190.40. The amount that had been received, as shown by the receipts on file in cases, and from statements on file in final and annual accounts, was $1,643.45. This testimony was received over the objection of defendant that it was secondary evidence, and therefore not competent, and this is the ruling of the court to which the counsel for appellants most strenuously object. The ruling of the court was unquestionably correct in this instance. It is well established, as a recognized exception to the general rule of evidence, that when it is necessary to prove the results of voluminous facts, or the examination of many books and papers, and the examination cannot be conveniently made in court, the result may be

proved by the person who made the examination. *Burton* v. *Driggs,* 20 Wall. 136, 22 L. Ed. 299; 1 Greenleaf on Evidence, par. 93.

It is alleged that the court erred in permitting the appellee to introduce the minutes of the board, the same not being in response to any issue in the case; but the record shows that the only purpose for which the minutes were introduced was to furnish evidence to establish the alleged indebtedness of Wood, for which purpose their introduction was proper.

The conclusion reached in regard to Bowman's testimony determines the question in regard to the sufficiency of the evidence as presented in the assignments above mentioned. These were predicated upon the incompetency of Bowman's testimony, which, if admitted in evidence, furnish sufficient evidence to sustain the judgment.

The Revised Statutes of Arizona of 1887 provide: In paragraph 409: "No demand on any county treasury shall be allowed by the board of supervisors in favor of any person in any manner indebted to the county, without first deducting such indebtedness." In paragraph 1987, as amended by act No. 53, 1889: "The only compensation allowed to county officials shall be the fees enumerated in this act, except assessors, who shall receive $1,200 for all services required of them, and except probate judges, who shall receive $1,200 per year for all services required of them as probate judge and *ex officio* clerk of the probate court." In paragraph 428: "In all counties where salaries are paid to them in lieu of fees, the sheriff, assessor, recorder, probate judge, and clerk of the probate court shall on the first Monday of each month in the year pay into the county treasury, except as by law otherwise provided, all money collected by them or received by them severally for fees. . . . It shall be the duty of every officer mentioned in the preceding section to collect in advance all fees, compensations, and percentage allowed by law." In paragraph 383, as amended by act No. 34 of the seventeenth legislature, approved April 3, 1893: "Whenever any board of supervisors without authority of law order any money paid out of the county treasury for salary, fees, or for any other purpose, such supervisors and the party or parties in whose favor such order shall have been made shall be responsible for all such sums of money and twenty per cent additional

thereon: . . . providing that any supervisor may relieve him-
self from responsibility by dissenting from such order and
having his dissent entered on the minutes of the board at the
time." The provisions of the statute as quoted have unques-
tionably made the office of the probate judge a salaried one,
and require him to collect in advance all fees legally charge-
able for his services, and to pay into the county treasury all
fees received by him. It was held by the lower court, on sub-
stantial evidence, that the said J. S. Wood as said probate
judge was, at the time the allowance in question was made,
indebted to the county, both for fees collected and not paid
in, and for fees that were not collected by him in advance, as
was made his duty by the statute; and the act of the seven-
teenth legislature amending paragraph 383 of the Revised
Statutes has definitely fixed, and very plainly stated, the
liability of supervisors and claimants under these circum-
stances. The construction and effect of this act were fully
considered in the case of *Avery* v. *Pima County, ante,* p. 26,
60 Pac. 702. The judgment of the lower court is affirmed.

Street, C. J., and Sloan, J., concur.