EUROPEAN AMERICAN BANK, Respondent, v R. MICHAEL
CAIN, Also Known as GARRY KLINGER, Defendant, and
PEPE MOTORS CORP., Appellant.

Second Department, February 23, 1981

APPEARANCES OF COUNSEL

*Andrew J. Fiore* for appellant.

*Sahn, Shapiro & Epstein (Barry S. Gillman* of counsel),
for respondent.

OPINION OF THE COURT

DAMIANI, J.

The plaintiff, European American Bank, made a loan to
defendant Cain to enable him to purchase a Mercedes-Benz
automobile from defendant Pepe Motors. On January 16,
1976 Cain delivered his personal note to plaintiff in which
he granted it a security interest in the automobile. The

plaintiff issued its check for the proceeds of the loan and an additional $3, payable to both Cain and Pepe Motors. The back of the check contained the following indorsement:

"EUROPEAN-AMERICAN BANK & TRUST CO.
(INSTALMENT CREDIT DEPARTMENT)

[xx] 600 OLD COUNTRY ROAD
GARDEN CITY, N.Y. 11530

OR

[ ] 209 W. MAIN STREET
RIVERHEAD, N.Y. 11901

HAS A FIRST SECURITY INTEREST GRANTED
PER AGREEMENT

DATED    1/20/76

IN       1976 Mercedes Benz
         (Year and Make)

SERIAL # 114060-12-120527

THIS CHECK INCLUDES $3.00 FOR MOTOR
VEHICLE FEE TO RECORD LIEN."

When it filed the application for a first certificate of title on the vehicle, Pepe Motors failed to record plaintiff's lien.

Cain apparently made payments on the loan for approximately three years and then defaulted. On January 25, 1979 the plaintiff bank elected to declare the entire balance of $3,900 to be due. When it attempted to collect this sum the bank discovered that defendant Cain was in jail in another State and that he had previously sold the car for value to a purchaser without knowledge of plaintiff's lien because the existence of that lien had not been recorded upon the certificate of title.

On October 8, 1979 plaintiff commenced this action by service of a summons and complaint upon defendant Pepe Motors. Its complaint contained two causes of action. The first was asserted against Cain, who apparently was never served with process, and sought recovery of $4,644.52, the amount due on the note, plus late charges and attorney's fees, less a credit for unearned interest. The second cause of action sought recovery of the same sum from Pepe Motors

upon the theory that it breached a contract with plaintiff in failing to record plaintiff's lien. The defendant Pepe Motors served its answer which admitted the receipt of the proceeds of the check in the amount of $9,987 and that no lien was recorded and which set forth the Statute of Limitations as an affirmative defense.

Plaintiff moved for summary judgment against Pepe Motors contending that the latter had admitted the essential facts of the action and that the defense of the Statute of Limitations was without merit since the action had been commenced within the six-year limit for actions based upon contract. Pepe Motors cross-moved for summary judgment dismissing plaintiff's complaint as to it upon the ground that the duty to record plaintiff's lien was imposed by subdivision (b) of section 2105 of the Vehicle and Traffic Law for which the three-year Statute of Limitations for actions based upon negligence or upon a liability imposed by statute was applicable (CPLR 214).

Special Term granted summary judgment to the plaintiff and denied defendant Pepe Motors' cross motion stating in relevant part that:

"In the opinion of this court, when the defendant Pepe accepted the plaintiff's check with the endorsements contained thereon, including the endorsement stating that the $3.00 fee for 'Motor Vehicle Fee to Record Lien' was included, an *implied contract* arose whereby defendant Pepe undertook to record the lien as set forth in the statute * * *

"Accordingly the court holds that the six-year statute applies and that the action is timely brought" (emphasis supplied).

Defendant Pepe Motors has appealed from the order entered upon the foregoing decision of Special Term contending that plaintiff's claim is time barred by the Statute of Limitations. Inquiry into this contention must be founded upon an understanding of certain relevant provisions of the Vehicle and Traffic Law.

In this State a certificate of title is required for all automobiles bearing a 1973 or later model year (Vehicle and Traffic Law, §§ 2104, 2102, subd [a], par [10]). Where, as here, such a vehicle is purchased from a dealer, subdivision

(b) of section 2105 of the Vehicle and Traffic Law requires that an application for a first certificate of title be made to the Commissioner of Motor Vehicles which: "shall contain the name and address of any lienholder holding a security interest created or reserved at the time of the sale and be signed by the dealer as well as the owner, and the dealer shall promptly mail or deliver the application to the commissioner."

The Commissioner of Motor Vehicles has promulgated a regulation concerning the recording of security interests which states in relevant part (15 NYCRR 20.15):

"SECURITY INTEREST

"20.15 Recording of security interests. (a) *Vehicles sold by a dealer registered under section 415 of the Vehicle and Traffic Law*. If a lender desires to have a lien recorded, he must notify the dealer of such fact and the dealer must list such lienholder on the application for registration or title (Form MV-82T) as directed on that form, and he must also list the total number of such liens on the certificate of sale (Form MV-50) for that vehicle in accordance with the regulations of the commissioner governing dealers. The fee for recording such security interests must be paid by the lender."

When a proper application for a first certificate of title indicates the existence of a lien, the commissioner is required to note the lien on the certificate of title and to issue and mail to the named lienholder a notice of recorded lien (Vehicle and Traffic Law, § 2107, subd [c]; 15 NYCRR 20.16). This notice of recorded lien is an important document for the lienholder since the commissioner's regulations require that it be used to indicate the satisfaction of the lien, succession of interest to the ownership of the vehicle or the assignment of the security interest (15 NYCRR 20.16, 20.17, 20.18).

It thus appears that upon plaintiff's request, defendant Pepe Motors was required by statute and regulation to note plaintiff's lien in the application for a first certificate of title upon the vehicle it sold to Cain. Pepe Motors admittedly failed to perform its duty in this regard but the bank should

have been alerted to that fact because it never received a notice of recorded lien from the Commissioner of Motor Vehicles.

The automobile having been sold free of plaintiff's lien and the borrower-owner Cain having apparently proved judgment proof, the bank has sought to recover its loss from the dealer upon a breach of contract theory. Pepe Motors contends that the action sounds in negligence or in breach of a duty imposed by statute and is therefore governed by the three-year period of limitation provided in CPLR 214 rather than the six-year period for actions upon contractual obligations, express or implied, set forth in CPLR 213.

Any one wrong may provide an injured party with several possible theories of action and it often occurs that these theories are governed by different Statutes of Limitation. However, since a plaintiff can have but one recovery for one wrong, "he has but a single cause of action and each of the available supporting theories is merely a different count in support of the single claim" (Siegel, New York Practice, § 37, p 39). From this the rule has developed that it is the gravamen or essence of the cause of action that determines the applicable Statute of Limitations *(Western Elec. Co. v Brenner,* 41 NY2d 291; *Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264; *Corash v Texas Co.,* 264 App Div 292, 295). We must therefore turn to an examination of the nature of plaintiff's claim.

It is not contended that at common law the vendor of goods had any duty to formally register the security interest of one who supplied all or part of the funds used by the vendee to effectuate the purchase. The enactment of article 46 of the Vehicle and Traffic Law, also known as the Uniform Vehicle Certificate of Title Act, and the regulations promulgated thereunder by the Commissioner of Motor Vehicles, imposed the duty upon dealers to note the security interest of a lienor on the application for a first certificate of title where requested to do so by the lienor. Thus the dealer's duty was created, and its nature and scope were defined by section 2105 of the Vehicle and Traffic Law and the regulations of the commissioner.

We agree with plaintiff that it is theoretically possible

to plead a cause of action for breach of an implied contract arising from the actions of the parties in this case (see 1 Corbin, Contracts, § 18; 1 Williston, Contracts [3d ed], § 3; Simpson, Contracts [2d ed], § 5; 9 NY Jur, Contracts, § 2). The promise by the plaintiff to make a loan to Cain would constitute sufficient consideration to support counter promises by Cain that he would repay the loan with interest and by Pepe Motors that it would perform its statutory duty to note the plaintiff's lien on the application for the certificate of title (1 Corbin, Contracts, § 125). It might be possible for a fact finder to infer from the indorsement on the back of plaintiff's check that it was making the loan only upon condition that Pepe Motors promise to perform its statutory duty. Although a promise by Pepe Motors to perform a duty already enjoined upon it by law is ordinarily not considered to constitute a legally sufficient consideration for a binding contract (Restatement, Contracts, § 76, subd [a]; 17 Am Jur 2d, Contracts, § 119; 1 Williston, Contracts [3d ed], § 132), it could be argued that when plaintiff made payment on the check it fully performed its promise and transformed an insufficient bilateral agreement into a valid unilateral one (1 Williston, Contracts [3d ed], § 106). The fact remains, however, that in order to infer the existence of a contract from the actions of the parties it must appear that they actually intended to form a contract. Here the indorsement on the plaintiff's check, upon which the plaintiff's breach of contract theory is based, is entirely consistent with the more probable inference that it was intended to function as the request by the lienor to the dealer that the latter note plaintiff's lien on the application, which request is required by the regulations of the Commissioner of Motor Vehicles (15 NYCRR 20.15 [a]).

While rather farfetched and of doubtful success, a breach of contract claim is thus technically pleaded here. However, it adds nothing to plaintiff's case. Essentially the alleged contract was one to perform a duty already imposed upon Pepe Motors by statute and administrative regulation. The only purpose served by the plaintiff pleading the contract and its breach is to avoid the Statute of Limitations. It does not change the essence of the action which, manifestly has its genesis in the statutory scheme concerning certifi-

cates of registration for automobile titles. It is the general rule that where a duty, and hence liability for its breach, would not exist but for a statute, an action to recover upon such liability is governed by the three-year Statute of Limitations set forth in CPLR 214 (subd 2) *(Shepard Co. v Taylor Pub. Co.,* 234 NY 465, 468; *Lorberblatt v Gerst,* 10 NY2d 244, 248; 2 Carmody-Wait, NY Prac, Limitation of Actions, § 72). Where, as here, the alleged contractual obligations add nothing to the defendant's pre-existing common-law or statutory duty, the shorter period of limitation is applicable *(State of New York v City of Binghamton,* 72 AD2d 870, 871-872; *D'Amico v Winkelman Co.,* 51 Misc 2d 205; *Blessington v McCrory Stores Corp.,* 305 NY 140; *Edwards v State of New York,* 95 Misc 2d 516; *Union Bank of Switzerland v HS Equities,* 423 F Supp 927, 929). We conclude, therefore, that this action, commenced more than three years after the breach of duty, is time barred and that Pepe Motors' cross motion to dismiss should have been granted. This works no injustice to the plaintiff, for when it failed to receive the notice of recorded lien from the Commissioner of Motor Vehicles (Vehicle and Traffic Law, § 2107, subd [c]; 15 NYCRR 20.16) within a reasonable time after the sale, ordinary prudence dictated an inquiry into whether its security interest had indeed been recorded.

HOPKINS, J. P., LAZER and MANGANO, JJ., concur.

Order of the Supreme Court, Nassau County, dated March 31, 1980, reversed, on the law, with $50 costs and disbursements, plaintiff's motion denied, appellant's cross motion granted and complaint dismissed as to it.